THE STATE, EX REL. FLAGG, APPELLEE, *v.* CITY OF BEDFORD ET AL., APPELLANTS.

(No. 27163—Decided June 10, 1965.)

*Mr. Irwin B. Fried,* for appellee.

*Mr. Louis H. Orkin,* director of law, and *Messrs. Griff, Weiner & Orkin,* for appellant.

SKEEL, J. This appeal comes to this court on questions of law from a judgment entered for the plaintiff after trial as set forth in the trial court's journal entry filed for journalization September 23, 1964. The action as first filed was styled as one seeking a writ of mandamus. Thereafter, plaintiff filed an amended petition, the controverted allegations of which were challenged by answer, although new service was not obtained, wherein the action was changed to one seeking to enjoin the city from paying fees for legal counsel for the Mayor of the city in an action pending against him in the Court of Common Pleas of Cuyahoga County. The action against the Mayor was filed by the former Director of Law of the city, Earl T. Longley, seeking damages for an alleged libel published on January 16, 1964, in the Bedford Times Register, a newspaper of general circulation in the vicinity of the city of Bedford.

The city of Bedford is a chartered city under Article XVIII of the Constitution of Ohio. By its charter, as adopted by the people, the form of government thus adopted is known as a city manager plan. The charter provides that every two years the council shall elect one of its members as president who also bears the title of mayor. The president presides at all meetings of the council, is entitled to one vote (as are other council members) but has no veto power. As mayor, he is vested with such administrative power imposed upon mayors by the general law of the state not inconsistent with the provisions of the charter. The charter also provides:

"* * * nothing herein provided shall be construed as conferring upon him [the mayor] any administrative or executive functions herein conferred upon other officers.

"He shall be recognized as the official head of the municipality for all ceremonial purposes, * * *."

The charter provides that the director of law shall be appointed by the council and shall serve in that office at its pleas-

ure. By resolution, passed January 21, 1963, Earl T. Longley was appointed Director of Law of the city of Bedford. On February 3, 1964, a resolution of the Council of the city of Bedford, appearing in the record, states that the office of Director of Law was vacant and Louis H. Orkin was appointed to fill the vacancy. Thereafter, on March 16th, a resolution was passed which recited that the Mayor of the city, Roger H. Skove, had been sued by the former Director of Law of the city for publishing in the Bedford Times Register certain alleged statements about the services of such Director of Law, claimed to be libelous; that on January 25, 1964, the council terminated the services of Earl T. Longley as Director of Law of the city of Bedford; that the council was desirous of providing an adequate defense for Mayor Skove in this suit in order that debate on public issues may be open "without deterrent from lawsuits such as aforesaid"; that the council found that it was in the public interest to provide such a defense to Mayor Skove; and that the Charter of the city of Bedford, Article IV, Section 2, provided that the Director of Law defend such suits, matters and controversies as the council may by resolution direct; and by such resolution council directed that the Director of Law defend such suit and be compensated for such services at the rate of twenty dollars per hour until the final disposition of the suit and that such compensation be in addition to his regular compensation as law director, to be paid upon written requisition to the City Manager.

From the judgment for the plaintiff enjoining the payment of such fees out of city funds for the defense of the Mayor in such lawsuit, as set out, the defendant city claims the following errors:

"1. The court erred in refusing to grant defendant's motion to dismiss at the close of plaintiff's case.

"2. The court erred in refusing to grant defendant's motion to dismiss and for judgment at the close of all the evidence

"3. The court erred by refusing to permit the defendant to cross-examine a councilman on the question of prior defenses of city employees in other personal lawsuits and ruling it irrelevant.

"4. The court erred in allowing plaintiff to reopen her case after all parties rested and final argument was completed.

"5. The court erred by abuse of discretion in allowing unjustified attorney fees to the plaintiff's attorney."

The claim that plaintiff's evidence wholly fails to support the allegations of her petition is without merit. The question is clearly presented as to whether the expenditure of the public funds of the city, as ordered by the aforesaid resolution, is lawful under the undisputed facts. The evidence shows that on January 16, 1964, an article appeared in the Bedford Times Register which stated that Mayor Skove was critical of the conduct of Earl Longley as Director of Law, with particular reference to his services in connection with a proposed referendum seeking to give the voters the opportunity to vote on a rezoning ordinance rezoning the property situated at the intersection of Lee and Turney Roads in that city. The evidence is undisputed that just prior to January 16, 1964, Mayor Skove went to the office of the Bedford Times Register and there talked with the editor about the services of the Director of Law in a proceeding attempting to enjoin the election board from presenting to the voters of the city by a special election a referendum vote which would sustain or repeal such ordinance. In the petition seeking to enjoin the referendum election, the city was not a party, and the court overruled the city's motion to intervene. While the ruling of the court seems to indicate that the request was not timely made, however, as a matter of law the city was not a proper party in such action, as claimed by the Mayor. In all events, whether or not there were valid reasons for complaining about the services of the Director of Law, the place for a councilman to present such complaint would be at a council meeting. No purpose could be served by going to a newspaper editor except to express the personal conclusions and opinions of the councilman. By denouncing the Director of Law out of the presence of the deliberative body that was charged by law with determining his tenure in office, the Mayor served no public duty vested upon him. The Mayor was not performing a duty on behalf of the city, with which he was vested by the city charter, its ordinances, or by public law, in conducting a private interview with the editor of a newspaper. The office of an editor of a newspaper is not the place to carry on the business of the city.

The power of a city council to direct the payment of public

funds is limited to satisfying obligations, the performance of which will be to the benefit or for the best interests of the city and its citizens, or those obligations which, under the law, such municipality is either legally or under some cases may be morally bound to assume. Private obligations unconnected with the services required of an officer or employee of a municipality in furtherance of the duties of his office or employment cannot be assumed, even if so directed by the legislative authority.

The plaintiff cites *State, ex rel. Thomas,* v. *Semple, Dir.,* 112 Ohio St. 559, as supporting the relief which she seeks. While this case was overruled by *State, ex rel. McClure, City Mgr.,* v. *Hagerman, Dir.,* 155 Ohio St. 320, the basis of this decision was whether paying the dues for membership in certain municipal corporation associations for officers for study of their common problems was an expenditure of money for a public purpose and for the benefit of the municipal corporation. The law in each case is the same, a holding that municipal expenditures must be confined to satisfying municipal purposes and legal obligations of such municipal corporations. At page 323 of 155 Ohio St., the court said:

"* * * It must be considered well settled that the funds of a municipality can be expended only for public purposes. * * *"

Also, at page 325, the court quotes from 64 Corpus Juris Secundum 334, 335, Section 1835 b, as follows:

" 'There is no universal test for distinguishing between a purpose which is public or municipal and, therefore, a proper object of municipal expenditure and one which is private, and, therefore, an improper object to which to devote public money. Each case must be decided in the light of existing conditions, with respect to the objects sought to be accomplished, the degree and manner in which that object affects the public welfare, and the nature and character of the thing to be done; but the court will give weight to a legislative determination of what is a municipal purpose, as well as widespread opinion and general practice which regard as city purposes some things which may not be such by absolute necessity, or on a narrow interpretation of constitutional provisions. * * *.' "

The author (Judge Middleton) then goes on to say that,

generally speaking, it is for the Legislature and not the courts to conclude what is a municipal purpose for which municipal funds may be expended, which conclusion must stand unless in the exercise of such judgment the legislative body abused its discretion. The cases cited by the court to sustain its conclusion that paying dues for municipal officers in associations organized for their benefit are set out at page 327.

The defendant cites 37 American Jurisprudence 744, Section 130, dealing with the power of a municipal corporation to provide counsel fees for officers or employees subjected to litigation for acts committed by such officers in the discharge of their duties wherein no cause of action can be stated against the municipal corporation by a third person claiming injuries. Actions for malicious prosecution, unlawful arrest, assault and battery for using excessive force in taking a person into custody, and the like are referred to therein. The law of the cases cited cannot be questioned, but on the facts such cases are clearly distinguishable from this case. Here the Mayor was not performing a duty imposed upon him by virtue of his office.

The defendant's claim of error in that the plaintiff should not have been permitted to reopen her case, having overlooked the need for establishing that she was a taxpayer and a citizen of the city of Bedford, is without merit. The court, in the exercise of its sound discretion, permitted the plaintiff to reopen her case, after the parties had rested their respective cases, to show that she was a taxpayer and a resident of the city. The city should have admitted such facts in the first instance, there being no doubt of the truth of such allegations which had not been controverted by the city except by general denial. No rebuttal evidence was offered by the city and, in truth, could not have been.

The issue of plaintiff's attorney fees was presented by motion after judgment. Testimony was taken of two reputed lawyers to support the claim of the plaintiff. The only defense presented was a statement by the Director of Law that the value of the services of plaintiff's counsel should be at the rate of twenty five dollars per hour and that it was the belief of the Director of Law that "these items are somewhat excessive."

There remained, therefore, only a question of fact which was determined by the trial judge who was the same judge who heard the case and was advised of the services rendered.

It must be remembered that the case here presented is an appeal on questions of law. An examination of the bill of exceptions shows there is substantial and credible evidence, most of which was presented from the public records of the city, to support the judgment and decree. We, therefore, affirm the decree entered by the trial court enjoining the expenditure of public funds for the defense of the Mayor in the action for libel now pending against him wherein the plaintiff is the former Director of Law.

*Judgment affirmed.*

SILBERT, C. J., and KOVACHY, J., concur.